HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| AMERICAN CAPITAL HOMES, INC., a Washington Corporation; AMERICAN PROPERTY DEVELOPMENT, INC., a Washington Corporation; AMERICAN PROPERTY DEVELOPMENT OF NORTHERN CALIFORNIA, LLC, a Washington Limited Liability Company; ROGER KUULA, an individual; and GREG BORREGO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GREENWICH INSURANCE COMPANY, a foreign corporation, and THE XL AMERICA INSURANCE GROUP, a foreign corporation,<br><br>Defendants. | NO. 2:09-CV-00622-JCC<br><br>PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' BAD FAITH CLAIMS AND PLAINTIFFS' BREACH OF COOPERATION<br><br>**NOTE ON MOTION CALENDAR: JULY 16, 2010**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION – RELIEF REQUESTED

Defendant Greenwich Insurance Company ("Greenwich") has filed a Motion for Partial Summary Judgment ("Greenwich's Motion") on the issues of Greenwich's bad faith and the Plaintiffs' alleged failure to cooperate. Greenwich's Motion is a transparent attempt to delay this Court's ruling on Plaintiff's Motion for Partial Summary Judgment, Docket No. 25. ("Plaintiffs' Motion)," which is at issue and was noted on the Court's Motion Calendar for May 14, 2010 and

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2}

to again reiterate Greenwich's arguments in opposition to that Motion.[1] Unlike Greenwich, Plaintiffs will not utilize the present Motion to regurgitate all of its arguments regarding Plaintiffs' Motion. Unfortunately however, because Greenwich's Motion raises no new issues, it will be necessary for Plaintiff's to revisit at least some the facts and arguments previously made in Plaintiff's Motion.

Greenwich's Motion should be denied and Plaintiff's Motion should be granted.

**EVIDENCE AND MATERIALS RELIED UPON**

In addition to this brief, Plaintiffs rely on the following:

1. Plaintiffs' Motion for Partial Summary Judgment (Docket No. 25);
2. Declarations of Jed Powell ("Powell Dec.") and exhibits (Docket No. 26);
3. Declaration of Terry Edwards ("Edwards Dec.") and exhibits (Docket No. 29);
4. Declaration of Brooke Kuula ("Kuula Dec.") and exhibits (Docket No. 27);
5. Declaration of Daniel Thieme ("Thieme Dec.") and exhibits (Docket No. 28);
6. Plaintiff's Reply in Support of Motion for Partial Summary Judgment (Docket No. 37);
7. Declaration of James P. Wagner ("Wagner Dec.") and exhibit, submitted herewith.

**ARGUMENT**

**A. Greenwich's Motion should be Denied as to Greenwich's Bad Faith.**

Greenwich re-hashes a myriad of its old arguments in contending that it is entitled to summary judgment on the issue of bad faith. All of these arguments were addressed in Plaintiff's prior briefing. Without repeating all of the arguments previously made, Plaintiffs' emphasize the following with respect to Greenwich's Motion:

1. <u>No Reservation of Rights Letter for 18 Months.</u>

---

[1] Greenwich likely hopes that, since both parties have requested Summary Judgment on the issue of bad faith, the Court will conclude that there must be a material issue of fact. However, as demonstrated by the briefing and declarations submitted on Plaintiff's Motion, there is no issue of material fact and Plaintiffs are entitled to summary judgment as to Greenwich's bad faith.

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2}

As is its wont, Greenwich mischaracterizes the issue relating to its failure to provide a reservation of rights letter to ACG before March 2008. The issue is not whether Greenwich "adequately" reserved its rights. The undisputed fact is that *neither* Terry Edwards nor the Plaintiffs were ever advised of **any** reservation of rights by Greenwich before March 23, 2009 – 18 months after the claim was tendered to Greenwich. Greenwich has submitted no documentation evidencing that the reservation of rights was transmitted to **anyone** prior to that date.

Even assuming, *arguendo*, that Greenwich actually sent the reservation of rights letter to Mr. Edwards in 2007, Greenwich has provided no explanation of why they would have sent this particular letter **only** to Mr. Edwards when, just three months earlier, Greenwich had sent a reservation of rights letter regarding a different claim directly to ACG, even though that claim had also been tendered to Greenwich by Mr. Edwards. Edwards Dec., ¶9, Ex.4. *See,* Plaintiff's Reply in Support of Motion for Partial Summary Judgment, pp. 3-4.

Greenwich has provided no valid explanation as to why it would have not sent the letter directly to ACG. Instead, Greenwich argues that, in the absence of specific direction to the contrary from ACG, Greenwich was entitled to assume that Mr. Edwards was authorized to receive important coverage communications. Greenwich's Motion, p. 4. However, the doctrine of apparent authority requires that "the principal's objective manifestations" must cause the party claiming apparent authority to reasonably believe that the agent has authority. *Udall v .T.D. Escrow Services, Inc.,* 159 Wash.2d 903, 913, 154 P.3d 882 (2007). Greenwich has cited no such "objective manifestations" because ACG never manifested any such intent.

Because Plaintiffs were not provided a reservation of rights letter until March 23, 2009, Plaintiffs were unaware that Greenwich intended to reserve its right to assert that some of the claims in the Donovan suit were not covered. Amazingly, Greenwich asserts that the fact that it received no coverage-related communications from ACG prior to 2009 somehow supports Greenwich's "apparent authority" claim. However, the reasonable inference from this fact (as

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }

well as the ultimate truth of the matter) is that there were no such communications from ACG **because ACG was unaware of Greenwich's purported reservation of rights.** Had such a reservation of rights been timely and properly communicated by Greenwich to ACG, ACG would have been proactive regarding any coverage issues. Because there was no reservation of rights communicated by Greenwich to ACG, ACG properly understood that it was being provided a complete defense. *Transamerica Ins. Group v. Chubb & Son, Inc.,* 16 Wn.App. 247, 249-52, 554 P.2d (1976), review denied, 88 Wn.2d 1015, *Safeco Ins. Co. of America v. Butler,* 118 Wn.2d 383, 391, 823 P.2d 499 (1992).

The earliest that anyone at ACG could have learned of Greenwich's denial of coverage for some portion of the Donovan claim was in January, 2009, when Greenwich's Brian Smith improperly asked defense attorney Aaron Crews "to prepare analysis on the causes of action alleged by [Donovan], specifically allocating percentages to each claim based upon whether or not it is covered under the [ACG] policy." Powell Dec., Ex.4. But that was not why ACG retained coverage counsel in January 2009.[2] As explained in the Powell Declaration (Dckt # 48), in January and February 2009, ACG retained coverage in January, 2009 because of the ongoing dispute with Greenwich regarding reimbursement for the e-discovery work ACG had paid for in 2008. At that juncture ACG was not looking to counsel to provide coverage advice pertaining to the coverage issues raised in Greenwich's belated reservation of rights, since ACG had no knowledge of any such reservation.

2. Greenwich controlled the Defense Under the Policy

Greenwich argues that *Transamerica v. Chubb* and *Safeco v. Butler* do not apply in this case because Greenwich was not "controlling the defense." Greenwich's Motion at pp. 16-17. Greenwich argues that because it complied with the "preapproved counsel endorsement" in the

---

[2] Greenwich disingenuously claims that, because Plaintiffs retained coverage counsel in January, 2009, two months before receiving the purported reservation of rights letter, it somehow shows that Plaintiffs were not "harmed" under *Transamerica v. Chubb* and *Safeco v. Butler.* Greenwich Motion, p. 17. This absurd argument reveals how far Greenwich will go to twist the facts to support its position.

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }

Policy by appointing Littler Mendelson as defense counsel, and because Littler attorneys worked with Plaintiffs to develop defense strategy, the Plaintiffs and not Greenwich "controlled" the defense. Greenwich Motion at pp. 16-17. It would be highly unusual if defense counsel did not work with the his or her clients investigating and defending a lawsuit. However, Greenwich asserts that, where defense counsel works with the insured client, the insured "controls" the defense. Such a result would stand *Transamerica v. Chubb* and *Safeco v. Butler* on their heads. If this was the test the insurer would almost never "control" the defense. However, the test is not whether or not defense counsel works with the insured. The test is whether or not the insurer acts in accord with the Policy provisions giving it the "right and duty" to defend the insured.

Neither of the two cases cited by Greenwich, *Ledcor Indus., Ins. v. Mut of Enumclaw Ins. Co.,* 150 Wn. App. 1, 206 P.3d 1255 (2009) and *National Union Fire Ins. Co. v. Greenwich Ins. Co., 2009 WL 272895* (W.D. Wash 2009) support Greenwich's contention that the selection of defense counsel approved by the insured, and consultation between defense counsel and the insured during the course of the defense, means that the insured "controls the defense."[3] *Ledcor Indus., Ins. v. Mut. of Enumclaw Ins. Co.,* 150 Wn. App. 1, 206 P.3d 1255 (2009) involved an action for bad faith against an insurer that had wrongfully failed to defend the insured. However, other insurers had provided a defense to the insured, and the insured had retained coverage counsel because of disputes with those other insurers.

Greenwich deliberately mischaracterizes the *Ledcor* holding as follows: "… a 14-month delay in reserving rights is not bad faith where the insured is defended and the underlying claim is resolved favorable." Greenwich Motion, p. 15. This characterization is blatantly false. In fact, the court in *Ledcor* **specifically upheld** the trial court's ruling that Mutual of Enumclaw

---

[3] Greenwich also relied on these two cases its opposition to Plaintiffs' Motion. Greenwich Opposition to Plaintiffs' Motion for Partial Summary Judgment, pp. 17-18.

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }

**had** acted in bad faith. 150 Wn.App. at 9. The *Ledcor* court then determined that, because other insurers had fulfilled their defense obligations, the insured had not been harmed by Mutual of Enumclaw's bad faith. *Id.* at 11. The court determined that the costs Ledcor had incurred to retain coverage counsel would have been incurred by Ledcor even absent Mutual of Enumclaw's bad faith, because of disputes between Ledcor and its other insurers. *Id.* at 13. This clearly distinguishes *Ledcor* from the present case, where there are no other insurers involved. There is no dispute that the damages being claimed by Plaintiffs were caused solely by Greenwich's bad faith and other breaches of duty.

It is even more remarkable that Greenwich purports to rely on this Court's decision in *National Union Fire Ins. Co. v. Greenwich Ins. Co., 2009 WL 272895* (W.D. Wash 2009). Not only does Greenwich again mischaracterize a key legal determination made by the Court in that case, the case is also fascinatingly similar to the present dispute with regard to Greenwich's bad faith conduct.

Greenwich grossly mischaracterizes *National Union v. Greenwich* as holding: "no harm where the underlying action was defended and settled on a reasonable basis, even though counsel was not being paid due to a billing dispute." Greenwich's Motion, pp. 15-16. In fact, this Court specifically held that Greenwich's failure to pay defense costs **had** caused harm to the insured, even though defense counsel had continued to represent their client's interests despite Greenwich's failure to pay them. Id., Slip Opinion, p. 5. Specifically the Court held:

> [T]he record established that the billing dispute, precipitated by Greenwich's unwillingness to pay, caused harm to Harris. Harris paid insurance premiums to Greenwich in exchange for primary coverage that included a duty to defend. When Greenwich prematurely stopped paying for Harris' defense, Harris did not receive the benefit of the bargain.

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT  - 6

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington  98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }

Id. The Court expressly rejected what it characterized as Greenwich's "no harm no foul" argument - the same argument Greenwich makes in this case[4] - noting that such an argument is "unsupportable as a matter of public policy" and was rejected by the Washington Supreme Court in *McRory v. N. Ins. Co. of N.Y.*, 138 Wash.2d 550, 980 P.2d 736, 741 (1999). *Id.*, p. 6.

Factually, *National Union v. Greenwich* reveals a pattern of behavior by Greenwich that is remarkably similar to that in the present dispute[5]. As the Court may recall, *National Union v. Greenwich* involved a dispute between the two insurers regarding payment of defense costs. Greenwich, the primary insurer, had a contractual duty under its policy to defend the insured, Harris Transportation Company ("Harris"). *Id.*, p. 5. National Union was the excess insurer and, after an unsuccessful mediation, National Union requested that the original defense attorney by replaced. *Id.*, p. 1. Greenwich agreed to replace the defense attorney provided that National Union would pay the fees incurred by the new firm to get "up to speed," and would also pay for the marginally higher billing rates charged by the new firm, Williams, Kastner & Gibbs ("WKG"). *Id.* National Union paid the entire first month's bill from WKG as transition time, and paid that portion of the second month's bill that related to the higher hourly rates. Greenwich, however, refused to pay the remainder of the second month's bill, professing surprise at the amount charged. *Id.*, p. 2.

Greenwich thereafter refused to make **any** defense cost payments to WKG arguing, as it does here, that National Union had "assumed control" over Harris' defense. Greenwich

---

[4] Greenwich's Motion starts with the assertion that Plaintiffs "long ago received the full benefit of their insurance contract with Greenwich." Greenwich's Motion, Introduction, p.2 (unpaginated). Later, Greenwich argues that Plaintiffs "ultimately received what the policy entitled it to." Greenwich Motion, p. 16. What Greenwich neglects to say is that Plaintiffs had to retain counsel and file this lawsuit in order to compel Greenwich to do these things.

[5] Indeed, the Court may wish to consider *National Union v. Greenwich* when evaluating Plaintiffs' claim under RCW Ch. 19.86.

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }

baselessly claimed that National Union had assumed full responsibility for paying defense costs. *Id.* The Court rejected Greenwich's argument, noting that the Greenwich Policy: "expressly provides that that it had a contractually duty to defend Harris until its limits were paid and exhausted." *Id.*, p. 5. As in *National Union v. Greenwich*, the Greenwich policy in this case gives Greenwich "the right *and duty*" to defend Plaintiffs until the policy limits are paid and exhausted. Powell Dec., Ex. 1 (emphasis added). Thus, as in *National Union v. Greenwich* the policy provides that Greenwich controls the defense.

The ultimate proof that Greenwich controlled the defense of the Donovan lawsuit is the fact, trumpeted by Greenwich in the present motion, that Greenwich "successfully negotiated a settlement of the *Donovan* action for $410,000…" Greenwich's Motion, pp. 9-10. Indeed, Greenwich admits that "**as it was obligated to do** [Greenwich] undertook to negotiate a favorable resolution." *Id.* (emphasis added). This admission is 180 degrees diametrical to Greenwich's claim that Plaintiffs "controlled" the defense.

In any event, the cases relied on by Greenwich, *Ledcor* and *National Union v. Greenwich,* do not stand for the proposition that, because defense counsel worked with the insured clients in defending the case, the insureds "controlled" the defense. Instead, Greenwich has grossly mischaracterized the holdings in *Ledcor* and *National Union v. Greenwich,* as well as the facts regarding this case.[6] Thus, under *Transamerica v. Chubb* and *Safeco v. Butler*, Greenwich's control of the defense for 18 months without informing the insureds of any reservation of rights constitutes bad faith and prejudice to the insured as a matter of law.

---

[6] It is also noteworthy that, in *National Union v. Greenwich*, Greenwich adopted the same litigation tactic it is utilizing here. In response to National Union's Motion for Summary Judgment, Greenwich filed its own Motion for Summary Judgment on National Union's bad faith claim. Having granted National Union's motion and awarding National Union attorneys fees under, *Olympic Steamship,* the Court denied Greenwich's motion. The same result is warranted here.

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT  - 8

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington  98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }

3. <u>Failure to Pay Defense and E-Discovery Costs.</u>

Greenwich repeats its "no harm no foul" argument in seeking to excuse its failure to make timely payment of defense costs incurred by Littler and its refusal to timely reimburse ACG for the electronic discovery costs it incurred in 2008. With respect the Littler bills, Greenwich argues that its delay in paying was because ACG had not paid the deductible. This argument conveniently ignores the e-discovery costs ACG paid in 2008 (which could have been applied against the deductible) and also ignores the obvious fact that Greenwich could have deducted any unpaid deductible amount from its payments to Littler.

Greenwich is equally self-congratulatory regarding its eventual reimbursement of the electronic discovery costs ACG incurred in 2008. Greenwich again ignores the fact that, before finally paying those costs **after this suit was filed**, it first tried to use the payment of those legitimate defense costs as a bargaining chip to leverage ACG into paying part of the Donovan settlement. Kuula Dec., ¶7. *See,* Plaintiffs' Motion, pp. 10-12.

4. <u>Commingling of Defense and Coverage Files.</u>

The worst example of Greenwich's improper commingling of its duty to defend the Plaintiffs' with its own coverage file was its January, 2009 request to defense counsel at Littler, documented in Brian Smith's contemporaneous notes, that Littler "parcel out what percentage of the settlement would go towards the non-covered claims." Powell Dec., Ex. 5. This attempt to co-opt defense counsel to advance Greenwich's own economic interests is a clear violation of Greenwich's duties under *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 715 P.2d 1133 (1986), as well as a *per se* violation of RCW Ch, 19.86. Greenwich sought to utilize defense counsel to assist it in minimizing coverage. This is precisely why it is improper for an insurer to comingle the defense and coverage functions in a case where the insurer believes coverage is subject to question. Thomas V. Harris, Washington Insurance Law 14-1 (2d ed. 2006) (citing

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT  - 9

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington  98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }

*Butler*, 118 Wn.2d at 395); *accord Ellwein v. Hartford Acc. and Indem. Co.*, 142 Wn.2d 766, 782, 15 P.3d 640 (2001); *Dan Paulson*, 161 Wn.2d at 924 and n.2.

Greenwich tries to excuse its misconduct by noting that Plaintiffs asked Littler to run a draft of certain correspondence by Plaintiffs' coverage attorney, Nate McKitterick, prior to sending the correspondence to Greenwich. However, this argument ignores the fact that under *Tank,* defense counsel in a reservation of rights case owes an exclusive duty of loyalty to the insured defendant. There is nothing improper about allowing having personal counsel for the insured review defense counsel's correspondence to assure that defense counsel does not inadvertently compromise the client's coverage. This is especially true where, as in this case, it becomes evident that the insurer is commingling the defense and coverage files.

5. <u>ACG's Affirmative Claims and the Alleged Littler Conflict</u>

Greenwich's Motion again raises the issues of ACG's affirmative claims against Donovan (Greenwich Motion, p. 7) and the alleged Littler conflict issue. (Greenwich Motion, pp. 7-8).

As to the affirmative claims ACG filed against Donovan, Plaintiffs' argument is that the fees expended by Cairncross & Hempelmann to prosecute the claims against Donovan benefited the defense of covered claims asserted against the Plaintiffs by Donovan. Thus, under *Nordstrom v. Chubb,* 820 F. Supp. 530 (W.D. Washington 1992), those costs should be covered under the Greenwich policy. See also*, Bordeaux, Inc*. *v. American Safety Ins. Co.* 145 Wash.App. 687, 697, 186 P.3d 1188 (2008). Defense attorney Aaron Crews of Littler testified in his deposition that the prosecution of the affirmative claims against Donovan in Washington was directly beneficial to the defense of Donovan lawsuit and was a factor in what Greenwich itself has characterized as a settlement "well within Littler's expected settlement range and below its

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

{01438810.DOC;2 }

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

optimal recommended settlement value." Wagner Dec., Ex. 1.

As to the alleged Littler conflict, one problem was that Greenwich raised the alleged conflict for the first time on April 30, 2009, only six days before the scheduled mediation on May 5.  Powell Dec., Ex 24.  ACG asserts that Greenwich raised the purported Littler conflict at the eleventh hour for its own economic reasons, seeking to confuse the mediation so Greenwich could further leverage ACG into paying a significant portion of the settlement.

Further, Greenwich's assertion of the Littler conflict ignored the Supreme Court's ruling in *Tank,* that "in a reservation-of-rights defense, RPC 5.4(c) demands that counsel understand that he or she represents only the *insured,* not the company." *Tank v. State Farm Fire & Cas. Co*. 105 Wash.2d 381, 387, 715 P.2d 1133  (1986) (emphasis in original).  Thus, if there was any conflict of interest presented as a result of Littler's role in drafting certain of the documents at issue in the Donovan lawsuit, it was solely an issue between Littler and the Plaintiffs, not Greenwich.  Greenwich's meddling in the attorney-client relationship between Plaintiffs and Littler needlessly complicated that relationship, diverted both Littler and the Plaintiffs from the defense and resolution of the Donovan dispute and caused additional harm to the Plaintiffs.

For these reasons and others set forth in Plaintiffs' Motion for Partial Summary Judgment, Greenwich is not entitled to summary judgment on Plaintiffs' bad faith claim.  Indeed, the Court should do as it did in *National Union v. Greenwich*: Deny Greenwich's Motion and grant the Plaintiffs'.

**B.     Greenwich's Motion should be Denied as to its "Lack of Cooperation" Counterclaim.**

Finally, Greenwich argues that it should be granted summary judgment on its counterclaim against Plaintiffs alleging breach of the duty to cooperate.  Greenwich Motion, p.

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington  98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2.}

24. The sole ground cited by Greenwich in support of this motion is the fact that Plaintiffs did not monetarily contribute to the Donovan settlement. Basically Greenwich's argument is that, because Donovan's Complaint included some allegations that Greenwich contends were not covered, then, *ipse facto*, Plaintiffs breached their duty to cooperate by not paying some portion of the settlement. This assertion ignores both the legal and factual realities in this case.

First, as Plaintiffs have pointed out repeatedly, Greenwich is estopped to deny coverage at this point because of its bad faith. *See,* Plaintiffs' Motion for Partial Summary Judgment, pp. 15-18. Further, as Greenwich admits, defense counsel's evaluation of the Donovan case fully justified the settlement paid by Greenwich (Greenwich Opposition to Plaintiffs' Motion for Partial Summary Judgment, p. 11). Third, even if Donovan asserted some claims that were not covered, there is no evidence that those claims had any real value or that any value was actually attached to them in the negotiation of the settlement amount. Thus, there is no legal or factual basis to support Greenwich's motion for summary judgment on its claim against Plaintiffs for alleged failure to cooperate.

## VI.   CONCLUSION

Greenwich's Motion is nothing but a rehash of arguments made in opposition to Plaintiffs' Motion for Partial Summary Judgment. As with the summary judgment motion it filed in *National Union v. Greenwich,* Greenwich's Motion has no merit and is simply a tactical ploy to "get in the last word" on these issues. As in *National Union v. Greenwich*, the Court should see through Greenwich's attempts at manipulation and its many mischaracterizations of the facts and holdings in the cases it cites.

Ultimately, the Court should deny Greenwich's Motion and grant Plaintiffs' Motion for Partial Summary Judgment.

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }

| | |
|---|---|
| 1 | DATED this 12th day of July, 2010. |
| 2 | CAIRNCROSS & HEMPELMANN, PS |

By:  *John E. D. Powell   via ECF*
John E. D. Powell, WSBA No. 12941
James P. Wagner, WSBA No. 10730
Attorneys for Plaintiffs
Cairncross & Hempelmann
524 Second Avenue, Suite 500
Seattle, WA  98104-2323
Phone:  206-587-0700
Fax:  206-587-2308
jpowell@cairncross.com
jwagner@cairncross.com

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington  98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }

**Certificate of Service**

I certify that on the date noted below I electronically filed this document entitled PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' BAD FAITH CLAIMS AND PLAINTIFFS' BREACH OF COOPERATION with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Matthew J. Sekits
Toni Y. Anders
Bullivant Houser Bailey PC
1601 Fifth Avenue
Suite 2300
Seattle, WA  98101-1618
206-292-8930
Matthew.sekits@bullivant.com
Toni.anders@bullivant.com
　　　　*Attorneys for Defendants*

Cathy A. Simon, Esq.
Gabriela Richeimer
Troutman Sanders LLP
401 9th Street, N.W.
Suite 1000
Washington, D.C.  20004-2134
Phone:  202-662-2013
Fax:  202-654-5841
Cathy.Simon@troutmansanders.com
gaby.richeimer@troutmansanders.com
　　　　*Admitted Pro Hac Vice –*

DATED this 12th day of July, 2010.

　　　　　　　　　　　　CAIRNCROSS & HEMPELMANN, PS


　　　　　　　　　　　　By: *John E. D. Powell  via ECF*
　　　　　　　　　　　　James P. Wagner, WSBA No. 10730
　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　Cairncross & Hempelmann
　　　　　　　　　　　　524 Second Avenue, Suite 500
　　　　　　　　　　　　Seattle, WA  98104-2323
　　　　　　　　　　　　Phone:  206-587-0700
　　　　　　　　　　　　Fax:  206-587-2308
　　　　　　　　　　　　jwagner@cairncross.com

PLAINTIFFS' OPPOSITION TO GREENWICH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington  98104-2323*
*Phone: 206-587-0700 · Fax: 206-587-2308*

{01438810.DOC;2 }