THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN CAPITAL HOMES, INC., *a Washington Corporation*; AMERICAN PROPERTY DEVELOPMENT, INC., *a Washington Corporation*; AMERICAN PROPERTY DEVELOPMENT OF NORTHERN CALIFORNIA, LLC, *a Washington Limited Liability Company*; ROGER KUULA, *an individual*; *and* GREG BORREGO, *an individual*,<br><br>Plaintiffs,<br><br>v.<br><br>GREENWICH INSURANCE COMPANY, *a foreign corporation*; *and* THE XL AMERICA INSURANCE GROUP, *a foreign corporation*,<br><br>Defendants. | Case No. C09-622-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 25) and Defendant Greenwich Insurance Company's Motion for Partial Summary Judgment. (Dkt. No. 55.) Having thoroughly considered both parties' arguments and the relevant record, the Court hereby DENIES Plaintiffs' motion, GRANTS IN PART Defendant's motion, and rules as follows.

ORDER
PAGE - 1

## I. BACKGROUND

This case concerns an insurance dispute that arose from a wrongful termination lawsuit (the *Donovan* action). The case does not concern the underlying facts of that lawsuit, however, but rather an insurance policy (the "Policy") that was issued by Defendant to Plaintiffs to provide coverage from November 23, 2006, to November 23, 2007. (*Id.* at 2.) The Policy states that in the event of certain types of employment lawsuits brought against the Plaintiffs, Defendant will pay some or all of an ensuing award, as well as expenses for legal representation and other aspects of Plaintiffs' defense expenses.[1] The Policy also contains a pre-approved counsel endorsement, which gives Plaintiffs the right to select Littler Mendelson—the law firm of Daniel Thieme, who has been providing Plaintiffs with employment advice for more than 20 years—as counsel for any employment liability claims. (Def.'s Mot. 2–3 (Dkt. No. 55).) The Policy also requires the two parties to allocate settlement based on their "relative legal exposures" where a claim sought both covered and uncovered losses. (*Id.* at 2.)

A month before the *Donovan* action was filed, Plaintiffs anticipated that litigation was imminent and incurred $30,548.79 in e-discovery expenses by hiring computer forensic specialists to preserve information relating to the impending *Donovan* action. (Pl.'s Mot. 10 (Dkt. No. 25).)

On September 13, 2007, Plaintiffs were sued by James Donovan for wrongful termination and other claims. (Pl.'s Mot. 5 (Dkt. No. 25).) The following day, Terry Edwards, Plaintiffs' broker, tendered the lawsuit to Defendant. (*Id.*) On September 18, 2007, Defendant responded to Terry Edwards with a letter acknowledging the tender and notifying Plaintiffs that Brian Smith would be serving as the claims adjuster for the matter. (*Id.*) In that letter,

---

[1] Under the Policy, covered "Defense Expenses" means: "reasonable legal fees and expenses incurred in the defense of any Claim . . . Defense Expenses will not include the Company's overhead expenses or any salaries, wages, or benefits of its directors, trustees, or employees." (Pl.'s Mot. 10 (Dkt. No. 25).)

ORDER
PAGE - 2

1    Defendant also stated that it would reserve all rights and defenses. (Edwards Decl. 9 (Dkt. No.
2    29-2).) Defendant restated its reservation of rights in a letter to Edwards dated October 17,
3    2007. (Edwards Decl. 11 (Dkt. No. 29-3).) Edwards did not receive this second letter, however,
4    until March 2009. (Pl.'s Mot. 5 (Dkt. No. 25).) Although the Policy requires that Defendant
5    provide Plaintiffs with direct notice of a reservation of rights, the only such notice that
6    Defendant provided was to Edwards. (*Id.* at 5–6)

7    According to Defendant's Procedures for Reporting and Billing, Defendant was
8    obligated to make quarterly payments to Littler Mendelson for its accumulated defense fees
9    and costs. (Pls.' Mot. 18 (Dkt. No. 25).) For the first 15 months of the *Donovan* action,
10    however, Defendant did not make these payments. (*Id.*) In December 2008, Defendant said that
11    it would not make payment until Littler Mendelson provide proof of compliance with certain
12    Policy guidelines. Plaintiffs provided Defendant with proof of compliance with these
13    guidelines on December 12, 2008. (*Id.* at 7.) Defendant wired the outstanding fees and costs to
14    Littler Mendelson on or about December 30, 2008. (Pl.'s Mot. 18–19 (Dkt. No. 25).)

15    As the *Donovan* action approached mediation, claims adjuster Brian Smith contacted
16    Littler Mendelson to discuss the case. (Pl.'s Mot. 9 (Dkt. No. 25).) In a January 14, 2009 phone
17    conversation, Smith asked Aaron Crews, an attorney at Littler Mendelson, to provide an
18    assessment of damages for each cause of action in the complaint. (Smith Decl. ¶ 32 (Dkt. No.
19    35).) The next day, Crews responded with an email confirming that Defendant wanted an
20    analysis of claims, allocating percentages to claims based upon whether or not they were
21    covered by the Policy. (*Id.* at ¶ 33.) In an email dated January 16, 2009, Smith responded that
22    Crews had misunderstood his request: because Littler Mendelson was not acting as coverage
23    counsel, due to a conflict of interest, Smith did not want Littler Mendelson to assess whether or
24    not particular claims were covered by the Policy. (*Id.* at ¶ 34.) Rather, Smith merely sought
25    potential liability for each cause of action. (*Id.*)

26

1    On March 9, 2009, Smith offered Plaintiffs $15,000 to settle the matter of the
2 outstanding e-discovery expenses, but Plaintiffs rejected the offer. (*Id.* at 11.)
3    On March 13, 2009, Smith left a voicemail for Crews stating his belief that a lot of
4 Plaintiffs' claims would not be covered by the Policy, and that Plaintiffs should expect to
5 "show up at the mediation with money." (Powell Decl. Ex. 10 (Dkt. No. 26-10).)
6    On March 23, 2009, Defendant learned that Plaintiffs had filed a separate lawsuit
7 against Donovan in Washington state court seeking damages for Donovan's alleged breach of
8 duty. (Def.'s Mot. 7 (Dkt. No. 55).)
9    On May 1, 2009, the parties exchanged allocation proposals for the impending
10 mediation. (*Id.* at 8.) When mediation began on May 5, 2009, Donovan's opening demand was
11 $720,000. (*Id.*) The parties resumed their allocation discussion, and agreed to participate
12 equally in a joint counteroffer of $100,000. (*Id.*) Donovan responded by reducing his demand
13 to $685,000, and the mediation concluded for the day. (*Id.*)
14    The next day, relations between the parties deteriorated. Plaintiffs did not resume the
15 allocation negotiations with Defendant and filed this lawsuit. (*Id.* at 9.) Through newly retained
16 counsel, Plaintiffs accused Defendant of bad faith and of violating Washington law. (*Id.*)
17    With its negotiating partner gone, Defendant continued to seek a settlement with
18 Donovan. (*Id.*) Defendant ultimately settled with Donovan for $410,000, an amount that fell
19 within Littler Mendelson's expected settlement range. (*Id.* at 9–10.)
20    Following the conclusion of mediation, Defendant made payment on two outstanding
21 obligations. On May 22, 2009, Defendant paid both Littler Mendelson's quarterly bill for the
22 work they had performed during the first quarter of 2009 (Pl.'s Mot. 19 (Dkt. No. 25)), and
23 Defendant paid the outstanding e-discovery expenses "in full." (*Id.* at 2.)

## II. PROCEDURAL HISTORY

Both parties have filed claims against each other, and both parties seek summary judgment on some of those claims now.

Plaintiffs argue that Defendant breached the Policy, the Washington Administrative Code (WAC) and acted in bad faith in various aspects of its handling of the case. Plaintiffs argue that Defendant: (a) committed bad faith by failing to timely and properly provide notice of its rights to deny coverage; (b) committed bad faith by assigning Brian Smith to handle both the defense and the coverage aspects of the *Donovan* litigation, by commingling defense and coverage files, and by attempting to enlist the support of Littler Mendelson in allocating damages between covered and uncovered claims; (c) committed bad faith by failing to promptly pay the e-discovery expenses and Littler Mendelson's fees; and (d) breached the WAC by failing to promptly pay the e-discovery expenses. As a result of these bad-faith acts, Plaintiffs argue, Defendant (a) should be estopped from denying coverage for any of the claims in the *Donovan* litigation; (b) are liable for fees and costs and exemplary damages; and (c) should not be awarded any of the costs or expenses incurred in settling the *Donovan* litigation. (Pl.'s Mot. 19 (Dkt. No. 25).) As a result of breaching the WAC, and of compelling Plaintiffs to file suit to recover Policy benefits, Plaintiffs argue, Defendant is liable for attorney fees and costs and exemplary damages.

Defendant's motion seeks summary judgment dismissal of Plaintiffs' bad-faith claims. (Def.'s Mot. 2 (Dkt. No. 55).) Defendant also seeks summary judgment on its counterclaim that by walking away from mandatory allocation negotiations, Plaintiffs breached the contract. (*Id.*)

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) mandates that a motion for summary judgment be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). There exists a genuine issue as to a particular fact—and hence that fact "can be resolved only by a finder of fact" at trial—when "[it] may reasonably be resolved in favor of either party"; conversely, there exists no

ORDER
PAGE - 5

genuine issue when reasonable minds could not differ as to the import of the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). Whether a particular fact is material, in turn, is determined by the substantive law of the case: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Summary judgment, then, demands an inquiry into "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law": if applying the relevant law to those facts about which no two reasonable factfinders could disagree dictates that the moving party must prevail, then a motion for summary judgment must be granted. *Id.* at 250–52.

## III.   ANALYSIS

### 1. Bad Faith

An insurance company has a duty of good faith to all of its policyholders. *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). Bad faith handling of an insurance claim is a tort and it is analyzed under general tort principles: duty, breach of that duty, and damages proximately caused by any breach of duty. *Mut. Of Enumclaw Ins. Co. v. Dan Paulson Constr. Co.*, 169 P.3d 1, 8 (Wash. 2007). In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded. *Kirk v. Mt. Airy Insurance Company*, 951 P.2d 1124, 1126 (Wash. 1998). Harm is an essential element of an action for an insurance company's bad faith handling of a claim under a reservation of rights. *Safeco Ins. Co. v. Butler*, 823 P.2d 499, 506 (Wash. 1992). If the insured shows by a preponderance of the evidence the insurance company breached its duty of good faith, there is a presumption of harm. *Id.* The insurance company can rebut the presumption by showing by a preponderance of the evidence that its breach did not harm or prejudice the insured. *Id.* If the insured prevails on the bad faith claim, the insurance company is estopped from denying coverage. *Id.*

Plaintiffs claim that Defendant acted in bad faith in three ways.

### a. Reservation of Rights

First, Plaintiffs argue that a delayed reservation of rights constitutes bad faith. In *Transamerica Ins. Group v. Chubb & Son, Inc.*, 554 P.2d 1080 (Wash. Ct. App. 1977), the court found bad faith where the insurance company's attorneys had assumed exclusive control of a defense without reservation, only to withdraw after ten months and deny liability under a reservation of rights. *Id.* at 1083.

Even if Defendant did breach its obligations by delaying its reservation of rights, triggering the presumption of harm, Plaintiffs' claims fail because Defendant has rebutted that presumption. In *Transamerica*, the primary support for the Court's finding of prejudice was the fact that the insured had not been able to select its own counsel; here, Littler Mendelson attorney Daniel Thieme has represented Plaintiffs for more than 20 years, and had advised Plaintiffs on the agreements that gave rise to the *Donovan* action. (Def.'s Mot. 2–3 (Dkt. No. 55).) A more analogous case, therefore, is *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 206 P.3d 1255 (Wash. Ct. App. 2009). There, the court held that plaintiff was represented at all times by competent counsel who aggressively defended plaintiff's interests and with whom plaintiff never expressed dissatisfaction. *Id.* at 1261. The court went on to affirm the trial court's denial of bad faith damages due to an absence of harm. *Id.*

Plaintiffs received the full benefit of the Policy: they selected a law firm they had had worked with for many years and in whom they expressed no dissatisfaction, were aggressively represented (Pl.'s Mot. 13 (Dkt. No. 25)), and arrived at a settlement fully funded by Defendant. (Def.'s Mot. 12 (Dkt. No. 55).) Accordingly, regardless of whether or not Defendant's reservation of rights was in bad faith, Defendant has shown by a preponderance of the evidence that Plaintiffs were not harmed or prejudiced.

Though a presumption of harm is inappropriate, Plaintiffs attempt to show specific examples of harm in several ways. These efforts are equally unsuccessful. Plaintiffs contend, for example, that: (1) they would have behaved differently in the *Donovan* litigation; (2)

ORDER
PAGE - 7

1   Defendant's delay increased the difficulty of the mediation effort; (3) they had no idea of the
2   need to employ independent coverage counsel; (4) they were unaware of the conflict of interest
3   facing their counsel; (5) they were unaware that Defendant had a conflict of interest; and (6)
4   Defendant's failure to pay Littler Mendelson may have resulted in less aggressive defense.
5   (Pl.'s Mot. 17 (Dkt. No. 25).)

6   Plaintiffs cannot point to a dollar lost or to a case in support of their contention that
7   these speculative losses amount to actual harm. The Court recognizes it is an "almost
8   impossible" burden for an insured to prove that he or she is demonstrably worse off because of
9   the insurance company's actions. *Safeco Ins. Co. v. Butler*, 823 P.2d 499, 504 (Wash. 1992).
10  Without showing that the insurance company acted in bad faith, however, this is the burden
11  that an insured must meet. Plaintiffs fail to meet it.

12  No reasonable finder of fact could determine that Plaintiffs were harmed by
13  Defendant's reservation of rights. Accordingly, Plaintiffs bad-faith claims relating to the
14  reservation of rights are DISMISSED.

15  **b. Commingling Coverage and Defense Functions**

16  Second, Plaintiffs argue that by commingling coverage and defense functions, Defendant
17  breached its duty. (Pl.'s Mot. 20 (Dkt. No. 25).) This assertion has no support in Washington
18  law. Plaintiffs cite to THOMAS V. HARRIS, WASHINGTON INSURANCE LAW 14–1 (2d ed. 2006)
19  for the proposition that an insurance company acting in good faith "must make certain that its
20  claims department does not commingle information from the tort-defense and coverage-dispute
21  files." But a review of this source reveals that the sole support for this proposition is the
22  following line from *Safeco v. Butler*: "[t]he Butlers assert the following acts are evidence of
23  Safeco's bad faith . . . Safeco attempted to use the Butlers' attorney to obtain statements for use
24  in the coverage action . . . ." 823 P.2d 499, 506 (Wash. 1992). The *Safeco* court never returned
25  to the Butler's contention to affirm that any such duty to avoid commingling existed. Plaintiffs'
26

ORDER
PAGE - 8

authority is rooted in the summary of a party's arguments, not a judicial holding. As such, it is not persuasive.

Plaintiffs also rely on *Ellwein v. Hartford Accident and Indemnity Company*, but it, too, fails to support Plaintiffs' claim that commingling constitutes bad faith. *Ellwein* concerned an insurance company that used an accident reconstruction expert to its advantage after originally hiring the expert to defend the uninsured motorist (UIM). 15 P.3d 640 641–42, 646 (Wash. 2001). Unlike the insurance company in *Ellwein*, however, Defendant never attempted to use Littler Mendelson to its own advantage. After the misunderstanding between Aarons Crews and Brian Smith about coverage, Defendant immediately clarified that it was not asking Littler Mendelson to perform coverage work. (Smith Decl. ¶ 34 (Dkt. No. 35).) Plaintiffs cannot plausibly claim that a brief and harmless misunderstanding by *their own* attorneys, which Defendant corrected, amounts to bad faith on the part of Defendant.

Accordingly, Defendant did not act in bad faith when it assigned a single adjuster to defense and coverage functions. Plaintiffs' commingling claims are DISMISSED.

### c. Delayed Reimbursement

Plaintiffs argue the manner in which Defendant handled the e-discovery expenses and Littler Mendelson's bills also amounts to bad faith. But Plaintiffs fail to show that Defendant breached an obligation in a manner that was unreasonable, frivolous, or unfounded. *Kirk*, 951 P.2d at 1126.

With respect to delayed payment of Littler Mendelson's bills, Defendant argues that payment was delayed because Littler Mendelson and Plaintiffs had failed to satisfy two Policy guidelines. (Def.'s Resp. 6 (Dkt. No. 33).) First, Littler Mendelson was obligated to provide Defendant with a preliminary report and budget within 45 days of its retention as counsel in the *Donovan* action. (*Id.*) Second, Plaintiffs were obligated to contribute a $35,000 deductible towards defense costs. (*Id.* at 6–7.) Plaintiffs provided Defendant with proof of compliance with these Guidelines on December 12, 2008. (*Id.* at 7.) Defendant wired the outstanding fees

and costs to Littler Mendelson on or about December 30, 2008. (Pl.'s Mot. 18–19 (Dkt. No. 25).)

Plaintiffs argue first that Defendant could have paid the fees before receiving confirmation of payment of the deductible. (Pl.'s Reply 10 (Dkt. No. 37).) Plaintiffs' cannot merely state what Defendant could have done, however, but must show that what Defendant did was unreasonable, unfounded or frivolous. It is reasonable that before an insurance company pays close to $200,000 in legal fees, it would seek confirmation that the insured is willing to meet its own obligations. Plaintiffs further argue that Defendant cannot prove that it requested a budget and report prior to December 2008. (*Id.*) Plaintiffs cannot show, however, that Defendant was obligated to make such a request. Plaintiffs do not dispute that the Policy required production of a report within 45 days. It is the duty of Plaintiffs and Littler Mendelson to comply with the Policy, not the duty of Defendant to request compliance. Plaintiffs have failed to present a genuine issue of material fact with respect to whether Defendant's payment of Littler Mendelson's fees was in bad faith.

Plaintiffs' claims regarding payment of the e-discovery expenses are no stronger. Defendant explains that the invoices related to the e-discovery expenses were submitted without explanation. (Def.'s Resp. 23 (Dkt. No. 33).) The only information Defendant had about the expenses is that they had been incurred without prior approval, possibly before the *Donovan* action was filed. (*Id.*) In these circumstances, Defendant argues, it was reasonable to deny the claim until further review was conducted regarding whether or not the expenses were covered by the Policy. (*Id.*) When Defendant had reviewed the expenses, it approved the claim and paid the outstanding amount in full. (Pl.'s Mot. 2 (Dkt. No. 25).)

Plaintiffs do not explain why Defendant's initial decision was unreasonable. Plaintiffs' primary argument against the reasonableness of Defendant's handling of the claim is that Defendant reversed its determination with no further submission of evidence and only after Plaintiffs had filed this suit. (Pl.'s Mot. 2 (Dkt. No. 25).) This argument cannot stand. If the

ORDER
PAGE - 10

Court were to hold that Defendant's change of position was a per se indication of unreasonableness, future insurance companies would be discouraged from changing coverage positions in favor of their insureds for fear that such a change would be perceived as an admission of error. Plaintiffs remaining argument is that the claim was "obviously" covered by the Policy, but offer no evidence that would allow the Court to arrive at the same conclusion. (Pl.'s Reply 10 (Dkt. No. 37).)

No reasonable finder of fact could determine that it was unreasonable or frivolous for Defendant to conduct a thorough review of Plaintiffs' e-discovery and legal expenses. Accordingly, Plaintiffs bad-faith claims relating to delayed reimbursement are DISMISSED.

**2. Washington Administrative Code Claims**

Plaintiffs bring a string of vaguely supported WAC claims, which fall into three categories.

First, Plaintiffs argue that Defendant's explanation that the e-discovery expenses were uncovered "corporate expenses" was a misrepresentation of policy provisions—in violation of WAC 284-30-330(1)—because the Policy contains no exclusion for corporate expenses. (Pl.'s Mot. 22 (Dkt. No. 25).) Plaintiffs' misreading of the Policy is exasperating. Section II(E) of the Policy clearly states that "Defense Expenses will not include the Company's overhead expenses." (Powell Decl. Ex. 1 at 12 (Dkt. No. 26).) Defendant did not misrepresent Policy provisions.

Second, Plaintiffs claim that Defendant violated WAC 284-30-337(7) by compelling Plaintiffs to initiate litigation to recover amounts due by offering substantially less than the amounts ultimately recovered. (Pl.'s Mot. 23 (Dkt. No. 25).) From the facts of the case, it does not appear that Plaintiffs required any compulsion to initiate litigation. Rather, Defendant was engaged in a claims adjustment process, which the Court has found to be reasonable and in good faith, when Plaintiffs walked away from the negotiation table and filed suit. Plaintiffs have offered no evidence that these tactics were necessary to recover their expenses. As

ORDER
PAGE - 11

mentioned above, the fact that Defendant increased their offering to Plaintiffs after the commencement of litigation does not prove that such litigation was necessary, and for this Court to hold that it did prove this claim would only discourage future good-faith resolution of disputes.

Third, Plaintiffs list several WAC provisions requiring an insurance company to handle a claim in a reasonable way and to resolve a claim quickly when liability has become reasonably clear. (WAC 284-30-330(2)–(4), (6), (12), (13).) As discussed above, Defendant handled Plaintiffs claims in a reasonable manner and settled the claim "in full" when liability was established. The central issue in the dispute over e-discovery expenses was whether or not the Policy excludes coverage for corporate overhead expenses. Plaintiffs maintain that there is no such exclusion. They are wrong. (*See* Powell Decl. Ex. 1 at 12 (Dkt. No. 26).) Defendant's characterization of the Policy provisions is accurate, and its attempts to verify Plaintiffs' claims were consistent with the clear language of the Policy.

Plaintiffs have failed to present a genuine issue of material fact with respect to their WAC claims. Accordingly, these claims are DISMISSED.

**3. Olympic Steamship**

Plaintiffs argue that because they were forced to file suit to obtain the benefit of their insurance contract, the ruling in *Olympic S.S. Co. v. Centennial Ins. Co.*, 811 P.2d 673, 675 (Wash. 1991) entitles them to attorney fees from Defendant. "*Olympic Steamship* stands for the proposition that '[w]hen insureds are forced to file suit to obtain the benefit of their insurance contract, they are entitled to attorneys' fees.'" *Butzberger v. Foster*, 89 P.3d 689, 699 (Wash. 2004). For the reasons discussed above, however, Plaintiffs have failed to present a genuine issue of material fact with respect to whether they were forced to file suit to recover the e-discovery expenses. Plaintiffs' argument that litigation was necessary to compel Defendant to pay Littler Mendelson's fees is also unconvincing. Plaintiffs do not allege that Defendant ever denied an obligation to pay Littler Mendelson's fees and costs. Rather, Plaintiffs allege that

ORDER
PAGE - 12

Defendant's late payments and requests for information before paying indicate an unwillingness to pay. (Pl.'s Mot. 13–14 (Dkt. No. 25).) Plaintiffs filed suit on May 6, 2009. (Dkt. No. 1.) At this point, pursuant to Defendant's quarterly billing cycle, Littler Mendelson's fees for the first quarter of 2009 were one month overdue. (Def.'s Resp. 25–26 (Dkt. No. 33).) Defendant had already indicated its willingness to pay Littler Mendelson, having paid approximately $197,862 in fees to Littler Mendelson for legal work done during 2008. (*Id.* at 13.) Plaintiffs have produced no evidence that a one month delay is so unreasonable as to require filing suit and merit an award of attorney fees.

Accordingly, Plaintiffs' claims for Olympic Steamship fees are DISMISSED.

**4. Plaintiffs' Affirmative Litigation**

Plaintiffs claim that Defendant should be responsible for the costs incurred by Plaintiffs in the suit they initiated against Donovan in Washington state court. (Def.'s Mot. 22 (Dkt. No. 55).) (*Id.*) Plaintiffs rely on *Nordstrom, Inc. v. Chubb & Son,* 820 F. Supp. 530 (W.D. Wash. 1992) and *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 186 P.3d 1188 (Wash. Ct. App. 2008) for the proposition that because the prosecution of affirmative claims against Donovan in Washington was directly beneficial to the defense of the original *Donovan* action, the costs of the affirmative action should be covered under the Policy. (Pl.'s Opp. 10 (Dkt. No. 59).) There is no support in these cases for Plaintiffs' arguments. In *Nordstrom*, the court held that an insurance company could not allocate expenses to the insured where the expenses were incurred in the *defense* of non-covered claims that were reasonably related to the defense of covered claims. 820 F. Supp. at 536. Bordeaux, too, dealt solely with uncovered defense costs that were related to covered defense costs. 186 P.3d at 1193. Neither opinion supports Plaintiffs' overreaching assertion that an insurance company should be required to cover the expenses for an affirmative lawsuit. Accordingly, Plaintiffs' claims seeking recovery of these costs are DISMISSED.

**5. Plaintiffs' Failure to Contribute Towards Settlement**

ORDER
PAGE - 13

1   Defendant also seeks summary judgment on its counterclaim for Plaintiffs' alleged
2   breach of contract. After the May 5, 2009 mediation, Defendant claims that Plaintiffs refused
3   to negotiate or contribute to the settlement of the *Donovan* action. (Def.'s Mot. 24 (Dkt. No.
4   55).) This refusal, Defendant argues, violates the Policy requirement that the parties allocate
5   between covered and uncovered losses. (*Id.*) Defendant concedes that the question of what the
6   exact allocation should have been is beyond the scope of this motion, but insists that *some*
7   allocation was required. (*Id.*) Plaintiffs respond that Defendant is estopped from denying
8   coverage due to bad faith, that defense counsel justified the settlement paid by Defendant, and
9   that there is no proof that Donovan's uncovered claims increased the settlement value. (Pl.'s
10  Resp. 12 (Dkt. No. 59).) Defendant says that Littler Mendelson assigned at least some risk to
11  every single one of Donovan's claims, some of which were not covered by the Policy. (Def.'s
12  Reply 9–10 (Dkt. No. 61). Defendant's arguments fail. Even if Littler Mendelson assigned
13  some *risk* to each of Donovan's uncovered claims, it does not follow that the final settlement
14  amount was driven in part by those claims. Defendant has failed to establish that there is no
15  genuine issue of material fact with respect to Plaintiffs' alleged breach of contract, and
16  Defendant's motion for summary judgment on this claim is DENIED.

**IV.   CONCLUSION**

For the forgoing reasons, Plaintiffs' motion for partial summary judgment is DENIED. (Dkt. No. 25.) Defendant's motion for partial summary judgment is GRANTED IN PART. (Dkt. No. 55.)

DATED this 30th day of August, 2010.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 14